### CROSBY & KELLER *vs.* BROWN.

The power of summary seizure and forfeiture conferred by the 74th section of the act of congress known as the *Internal Revenue Act*, upon the revenue officials, to be exercised at their discretion, is an extraordinary power, in derogation of common right. And if it can be maintained, consistently with that clause of the constitution which provides that no person shall be deprived of his property without due process of law, or consistently with that other provision which declares that the right of the people to be secure in their effects against unreasonable seizures, shall not be violated, the statute conferring it must be most strictly interpreted, and cannot be extended, as against the citizen, beyond what the language of the act imperatively requires.

It is only in case of contumacy in *refusing* to produce and exhibit the receipt for the license-tax which the person of whom its production is demanded has, that the seizure mentioned in section 74 of the act, is authorized. And the power conferred, to seize, assumes that there is a receipt which may be produced.

The authority to seize the property of a peddler, under that section, was only intended by congress to secure the production and exhibition to the officer of such receipt or evidence of payment as might have been issued to the peddler by the collector; and not to authorize a seizure in case the required special tax had not been paid.

The right to seize and forfeit the team of a peddler is not conferred upon assistant assessors of internal revenue on account of the insufficiency, in their opinion, of the amount paid as a special tax, or for any defect which they may think exists in the form, or substance, of the receipt which has been issued by the collector, and which is produced and exhibited to them, on demand.

They are not called upon to exercise the judicial power of determining such questions, but only to act upon a patent fact within their own cognizance.

APPEAL, by the plaintiffs, from the order of the county court of Cattaraugus county, setting aside a judgment for the plaintiffs, rendered on the report of a referee, and directing a new trial. The facts appear in the opinion.

*W. F. Cogswell,* for the appellants.

I. The defendant had no legal right or authority to take into his possession and detain the peddling establishment and goods of the plaintiffs mentioned in the complaint. The plaintiffs, at the time of the seizure, had fully com-

Crosby *v.* Brown.

plied with all the provisions and requirements of the act of congress, entitled "An act to provide internal revenue to support the government, to pay interest on the public debt, and for other purposes. Approved June 30, 1864, as subsequently amended." They traveled with two horses, and are classified and rated by section 79, subdivision 32, of the act, as follows : "When traveling with two horses or mules, the second class, and shall pay twenty-five dollars," unless the peddler shall sell, or offer to sell, goods in the original packages, and then $50. (§ 79, *subd.* 32. 13 *Stat. at Large, p.* 248, 251, § 79. 2 *Brightly's Dig.* 346.) The plaintiffs proved, by Adon D. Crosby, that they did not sell, or offer to sell, in the original packages, and the referee has so found as a question of fact. At the time of the seizure, the plaintiffs had paid a special tax for this peddling establishment of $25 as peddlers of the second class, and had received from the collector of the district in which they resided, a special tax receipt therefor, dated April 23, 1868, for the year ending May 1, 1869, and which the plaintiffs exhibited on the demand of the defendant.

II. At the time of the seizure, and in the month of August previous, the plaintiffs had applied for, and paid to the government, an additional special tax of $25 on this same peddling establishment, for the year ending May 1, 1869, making in the aggregate $50. This application was made, and money paid, in order to avoid further difficulty with the defendant, and not because their business required it, and was made as soon as it came to the knowledge of the plaintiffs that the defendant had made objections to their first tax receipt. They acted in good faith, and there is no evidence in the case proving, or tending to prove, that they attempted to evade the law.

III. The plaintiffs, on the 20th of September, 1868, presented to the defendant the first and the additional special tax receipt, and demanded the possession of the property.

The defendant refused to deliver the same, and detained it until the 28th of September. Subsequent to the seizure, no proceedings were had under section 74. The defendant had no legal right or authority to detain said property after such presentation and demand.

IV. The only right or authority the defendant had to seize this property, is the right and authority with which he was invested by section 74 of the act. Section 73 imposes a penalty upon those engaged in business without having paid a special tax. Section 74 provides: "And every person exercising or carrying on any trade, business or profession, or doing any act for which a special tax is imposed, shall, on demand of any officer of internal revenue, produce and exhibit the receipt for the payment of the tax, and unless he shall do so, may be taken and deemed not to have paid such tax." Such persons are liable to the penalty imposed by section 73. Section 74 further provides: "And in case any peddler shall refuse to exhibit his or her receipt, as aforesaid, when demanded by any officer of internal revenue, said officer may seize," &c. This statute is penal in its nature, imposing a forfeiture of property, and should be strictly construed. It applies only where there is a refusal to exhibit any receipt, and cannot apply where the party exhibits a receipt defective in form or insufficient in amount. The plaintiffs did not refuse to exhibit their tax receipt, but, on the contrary, did exhibit it when demanded by the defendant.

V. It is an admitted fact in the case, that the plaintiffs were the owners of the property, and Charles Wales, who drove the establishment, was the agent of the plaintiffs, under a salary, and had no interest in the goods. The tax receipts were, therefore, properly issued in the name of the firm. The Hon. E. A. Rollins, commissioner of internal revenue, has given the statute the following construction upon this point, in reply to a communication

addressed to him by Hon. George F. Edmunds, United States Senator:

"Washington, March 3d, 1869.

Sir: You state that a certain firm of persons in Vermont, engaged in the manufacturing of tinware, employ and send out a large number of men, who sell such ware for them, traveling from place to place in the manner of peddlers; that the firm owns the goods, the horses and carts, and pays the special tax for all the men; that it often happens that one of these men is dismissed or voluntarily leaves the employ of the firm, and that inasmuch as the special tax receipts are not transferable from person to person, the amount paid for the unexpired portion of the special tax year is lost to them. You inquire if some such construction cannot be given the statute as shall prevent this loss to the firm, and yet be reasonable and just to the government, and not violate the spirit of the law. I reply that, in my opinion, under the circumstances, and upon the facts as presented, the *firm* may be regarded as the peddler, and that the men thus employed and sent out, like the clerks in a store, may sell for them in the manner above mentioned, under special tax receipts issued in the name of the firm. Each of the employees should be able to exhibit a peddler's special tax receipt, upon the demand of an internal revenue officer, and should also be prepared to show that he is actually in the employ of the person or firm whose name appears upon the receipt. A change of part, or of all the individual members of a firm, is a change of the firm. The new firm is a distinct person, in law, from the old one, and requires a separate license. Consequently, in the case stated, a change in the firm would necessitate the payment of a special tax in the case of each and every employee, regardless of the taxes paid by the old firm.

Very respectfully, E. A. ROLLINS,

Commissioner."

Crosby *v.* Brown.

*D. H. Bolles,* for the respondent.

I. The special tax receipt produced by Wales, upon demand of the appellants, did not answer the requirements of the act of congress. 1. It did not designate Wales as the peddler, or refer to him in any way. The act imperatively required him to be thus designated or referred to. The seizure clause of section 74, already quoted, provides that "in case any peddler shall refuse to exhibit his receipt," &c., the officer may seize, clearly evincing that the receipt to be produced is a receipt belonging to the person found peddling wares, and which mentions his name. Section 71 provides that no person engaged in any business specified in a subsequent section of the act, shall prosecute that business without paying a special tax there-. for. Section 72 provides that every such person shall register the character of his business, with certain other details, in the office of the assistant assessor in his district. And if he is a peddler, shall state "whether he designs to travel on foot, or with one, two or more horses, or mules," and shall pay the special tax to the collector, "who shall give a receipt therefor." It is incontestably the sense of this section, that the person who is to pay the special tax and take the receipt is the person who designs to travel with the wares. Subdivision 32 of section 79 is still more precise and emphatic. It enacts that "peddlers shall be classified and rated as follows, to wit: When traveling with more than two horses or mules, the first class, and shall pay fifty dollars; when traveling with two horses or mules, the second class, and shall pay twenty-five dollars; when traveling with one horse or mule, the third class, and shall pay fifteen dollars; when traveling on foot or by public conveyance, the third class, and shall pay ten dollars." Here the statute leaves no doubt whatever that the person who is to pay the special tax is the person who travels with the pack or wagon, and that the person who so travels is the "peddler" intended and designated by

the law. Section 74 provides for the contents of the special tax receipt to be issued by the collector, and requires it to state, if issued to a peddler, whether the tax imposed is for "traveling on foot, or with one, or two, or more horses or mules." It further requires that the receipt shall state "the name and place of abode of the person paying the tax." Thus the law itself unmistakeably designates the person who is to pay the special tax imposed upon the occupation of a peddler, as the person who travels with the goods, and requires the receipt to specify his name as that of the peddler. Such, too, was the construction of the revenue department, from its foundation till long after the transaction in controversy. It will, however, be insisted by the respondents, that inasmuch as Wales was simply their salaried agent, and had no interest in the business, they, being the proprietors of the establishment, were essentially the peddler, and the receipt in their name was sufficient. It is believed that this theory will not bear an instant's scrutiny. (*a.*) It is emphatically contradicted by the provisions and definitions embodied in the law already cited. (*b.*) The common definition of "peddler" is, "a traveling foot-trader—one that carries about small commodities on his back, or in a cart or wagon, and sells them." (Webster.) This definition applies perfectly to the participation of Wales in the business, but in no way to that of the respondents. (*c.*) The seizure clause of the act itself would seem conclusive. From whom is the officer to make the demand? Clearly from the party he finds peddling within his jurisdiction, and not some person entirely outside of it. Whose receipt is to be demanded? "His," that is, the receipt of the person upon whom the demand is made, as the statute clearly indicates. What property is to be seized in case the demand is not complied with? Evidently the property such person is found using in that business. No fair or undistorted construction can render this part of the

law in any other manner. (*d.*) The law does not discriminate in any place between the dealer, who peddles from his own establishment, and him who, as agent merely, peddles from the establishment of his employer. Yet it is absurd to suppose that the legislators, who framed and passed their law, were not aware that a large body of the peddlers in the country were merely agents, and equally absurd to suppose that, had any distinction been intended between the two classes, it would not have been expressed by apt and explicit language in the law itself. (*e.*) Upon the respondents' theory, Wales had no need of a license, even in their names. If they were the peddlers, it should be in their hands, not his, and the only legal demand for its production possible, was to be made on them. Nay, more ; if the employer is the peddler, he need pay but one special tax, and possess but one receipt, although he sends out a score of itinerating agents disposing of his goods from as many different establishments. (*f.*) The construction contended for by the respondents is not only incompatible with the language of the law, but is hostile to its policy. The act discriminates against the peddler, as contrasted with all other classes of business men, liable to pay a special tax. It bases this discrimination upon the essential vagabondage both of his business and his character, and to prevent him from evading his duty under the law, by a resort to those facilities of escape with which his very occupation supplies him, vests in the officer the power, by summary seizure and condemnation, to prevent such evasion. Yet if the theory mooted is sound—if it is sufficient that the employer, who may be a thousand miles away, have a receipt, or the traveling agent carry one in the name of his alleged principal—in nine cases out of ten the seizure clause of the law is an utterly dead letter. (*g.*) The fact is, and it is patent on the face of the law, and the character of this occupation, that as the traveling agent in every such case is distant from the supervision

Crosby *v.* Brown.

of his employer; as he is himself the apparent owner of the establishment; as he disposes of the goods in quantities, on terms, and as to prices, to suit his own discretion, unchecked by any ostensible superior; as he is the active dealer, and his principal merely the distant source of supply; as he attends but one establishment, while the principal may be possessed of many; and finally, as he carries with him all the indicia of an occupation liable to special tax, while the proprietor at home is surrounded by no such palpable evidences of liability, the law regards the agent as the principal, for all the purposes of imposing and enforcing the special tax. 2. But even conceding that the designation of Wales in the receipt was needless, that document was still a nullity. In most classes of business, subject to the payment of a special tax, carried on by a firm, it is sufficient that the firm pay the special tax, but under the provisions of section 78 each member of a firm of peddlers is obliged to pay the special tax imposed on that business. The tax in question was paid by the firm, and ran to the firm, and neither member paid a special tax as peddler, or for either establishment the firm sent out. 3. According to the definition in the first proviso of subdivision 32, of section 79, the establishment in question was that of a peddler of the first class. As clearly shown by the plaintiffs themselves, on the trial, Wales sold " dry goods, foreign or domestic, by one or more original pieces or packages at one time to the same person or persons." He sold altogether to merchants and dealers on his route. Crosby says that " he sold in pieces or packages as put up by the manufacturer;" that " he sold thread in boxes as put up by the manufacturer, a dozen spools in a box;" that although he (Crosby) had been informed that the manufacturers of thread did put up cases of a hundred dozen boxes of spools, he knew nothing about that personally, but the firm purchased by the box, although buying quantities of boxes at a time." But whatever may be

the case as to the thread, there is no dispute that Wales sold other goods in pieces and packages as put up by the manufacturer. This fact made somebody connected with the establishment a peddler of the first class, and subjected him to the payment of a special tax of fifty dollars, instead of twenty-five. As the latter sum only was named in the receipt produced, the document was wholly nugatory.

III. If the receipt was defective in any of the particulars referred to, the defendant was not only justified in making the seizure, but was bound by his official duty to make it. 1. The provision already cited declares that "in case any peddler shall refuse to exhibit his or her receipt as aforesaid, when demanded," &c., the officer may seize. The words "as aforesaid" in this connection evidently refer to so much of the antecedent sentence as goes to give quality and character to the receipt which must be produced, in order to meet the exigency of the provision. They cannot refer to that part of the antecedent sentence relating to the receipt being demanded, because immediately after the words "as aforesaid" occur the words "when demanded," &c. The phrase evidently means that in case any peddler shall refuse to exhibit his or her receipt for the payment of the tax imposed for his business or occupation, he subjects his establishment to seizure. It is not sufficient to exhibit a receipt for the payment of a special tax. He is required to exhibit his receipt for the payment of the special tax, and when he fails to comply with this requirement he has "refused" to exhibit his receipt, within the meaning of the provision. 2. That a non-production of the proper receipt, upon demand, is a refusal to exhibit it, within the sense of the statute, is apparent from the context and purpose of the provision. The object of the seizure clause is to prevent, by summary measures, the evasion of the revenue law by a fugitive and uncertain class of dealers, not merely to punish them for contumacy in refusing to produce an adequate receipt when they have

one, but for not having paid the special tax imposed, of which the non-production of the proper receipt is conclusive evidence. This being so, the production of an inadequate receipt or the non-production of any, is a refusal to produce, and subjects the offender to the penalty. 3. In the present case Wales was not only entirely without excuse, but his production in September of the same receipt which the defendant had refused to accept as sufficient two months before, was a contumacious and aggravated refusal to produce the proper document. It is true, he stated that another special tax receipt had been paid for and would soon be forthcoming, but what the law exacted of him was precisely what the defendant demanded, not an oral statement which might or might not be true, but a document answering the requirements of the law, and importing absolute verity upon its face. Besides, how could the defendant know that the new receipt applied for would not be as defective as the old, and indeed when it finally made its appearance, it was, as appears, infected with the same points of non-compliance with the act as the first, except that the new and old receipts together furnished evidence that $50, instead of $25 only, had been paid on account of the establishment, as that of a peddler of the first class. 4. The defendant's duty in the premises was plain and unmistakeable. The law, it is true, declares that in case of non-production of a proper receipt upon demand, the officer "may" seize, thus vesting him apparently with a discretion as to whether he should exercise the power or not. But there came a time when the permissive term devolved upon the defendant an imperative obligation. When, in July, this defective receipt was exhibited, the defendant did right in pointing out its defects, refraining from seizure, but warning Wales of the consequence of a repetition. When, in September, the same document was produced, with a perfectly baseless apology for the lack of another, the defendant acted only in obedi-

ence to the plainest dictates of official duty, in administering the penalty. 5. That the property seized belonged to the respondents and not to Wales does not argue against its liability to seizure. (*a.*) The law declares that the officer, in case of default, may seize the horse or mule, wagon, &c. "of" the person refusing to comply with the demand. The word "of" is used both in a proprietary and in a possessive sense, and its generic and primary meaning includes the one as well as the other. Hence the exigency of the term is entirely answered by construing the phrase as meaning that the officer may seize the horse or mule, wagon, &c., in the possession of the person refusing. (*b.*) If the law designates the traveling agent as the peddler, it assumes him to be the proprietor for all its purposes of imposing and collecting the special tax against the establishment. Nor can the employer complain, for it is his duty either to provide his agent with a proper and adequate receipt, or to see to it that the property is intrusted to an agent armed with a document competent to protect it. (*c.*) If the respondents are to be regarded as the peddler, and the receipt produced was void either because it was not in the name of a member of the firm or because the establishment was of a peddler of the first class, then of course the property was liable to seizure, because they, in law, were the party refusing to produce an adequate receipt upon the demand of the officer, although the refusal was made in the person of their subordinate.

IV. The referee decided the case in favor of the respondents substantially upon the ground that as they had, prior to the seizure, paid to the collector the additional $25, making a total payment of $50, special tax on account of this establishment, the law had been in spirit complied with. This position is utterly untenable as a basis of the judgment. 1. It utterly ignores the defect in the receipt in failing to name the peddler himself, or the respondents

Crosby *v.* Brown.

individually. 2. It equally ignores the statute, which provides (§ 74) that if a person engaged in a business subject to special tax shall, on demand, fail to produce the receipt for its payment, " he may be taken and deemed not to have paid such tax. And in case any peddler shall refuse" to produce his receipt, &c., the officer may seize. It is not the payment of the tax, but the production of the voucher, that is to save the property from seizure.

V. If the seizure was lawful, the detention was equally so, so far as concerns the appellant, notwithstanding the presentation of the additional receipt. 1. That receipt was as defective as the first, and in the same way. 2. The law nowhere vested the appellant with the power of restitution, and indeed nowhere compels any officer in such case to release the seizure upon *ex post facto* proof of payment of the tax. 3. The appellant had no jurisdiction over the property after seziure. Immediately upon being seized it fell under the jurisdiction of the assessor, and any application for a release was to be made to the assessor, and to him alone. The appellant could not be charged or put in default.

*By the Court,* TALCOTT, J. This was an action against the defendant for seizing a pair of horses, harness, wagon and load of goods, belonging to the plaintiffs, and detaining the same against their consent. The defendant attempted to justify the seizure as assistant assessor of internal revenue.

The plaintiffs are copartners, doing business at Cuba, in Allegany county, which is within the 27th collection district of the State of New York, under the provisions of. the act of congress known as the Internal Revenue Act. They had two teams, consisting of a wagon and two horses, each in charge of an agent employed at a salary and engaged in peddling from such wagons on different routes. The team in question was accompanied by, and under the

Crosby v. Brown.

charge of, Charles B. Wales, who was, as stated, employed by the plaintiffs as their agent in peddling, at a salary, and having no interest in the team or goods thereby conveyed. The accustomed route of Wales embraced the village of Olean, in Cattaraugus county, which is within the third division of the 31st district of the State of New York, under the internal revenue law, and the defendant was, before and at the time of the seizure, assistant assessor of internal revenue, in that division, under the said act. The internal revenue act of June 1864, as subsequently amended, (§ 79,) classifies peddlers into classes, and designates those traveling with two horses or mules as of the second class, and provides that those so traveling shall pay a license tax of twenty-five dollars, unless they shall sell or offer to sell certain goods in the original packages, in which case they are to pay fifty dollars. The plaintiffs had paid for each of their teams a tax of $25, as peddlers of the second class, to the collector of the 27th district, in which their store was located, and taken separate receipts therefor, one of which was in the custody of, and carried by, Wales on his route. In July, 1868, the defendant found Wales with the establishment in his charge at Olean, traveling and peddling goods, and he thereupon demanded that Wales should produce and exhibit his receipt for the payment of the special tax prescribed in the act of congress. Wales thereupon produced and exhibited to the defendant the receipt which had been given to the plaintiffs by the collector of the 27th district, for the payment of twenty-five dollars, as a peddler of the second class, for the year ending May 1st, 1869. The defendant thereupon told Wales that the receipt thus produced was defective; first, because it did not mention the name of Wales, but only the names of the plaintiffs; and second, because Wales was, as the defendant claimed, selling foreign and domestic dry goods in the original packages to the same person or persons. That the special tax

Crosby *v.* Brown.

in such case was fifty dollars, and that the receipt should have been for the latter sum. The defendant then made no seizure, but informed Wales he should do so the next time he found him with that or a similarly defective receipt. Wales soon after informed his employers, the plaintiffs, what the defendant had said, and thereupon the plaintiffs made an application to the assessor of the 27th district, for a re-assessment of their license, and paid an additional twenty-five dollars on each of their said peddling establishments. The license was duly re-assessed, and the collector of the 27th district, on the receipt of these additional sums, and on the 19th day of August, 1868, gave two additional receipts dated on that day, in a form which appears to have been in use in case of re-assessment of a United States license, which, after reciting that whereas license No. — &c., granted to Crosby & Keller, had been re-assessed by the assessor for the district, in the sum of twenty-five dollars, which assessment had been returned to the said collector for collection, acknowledged the receipt of the amount of the said re-assessment, and granted that the receipt (termed certificate) might be attached to said license, and when attached, should be a good and sufficient indorsement thereon. This receipt or certificate of re-assessment was not received by the plaintiffs till the 19th day of September, 1868. On the 18th of September, the day before the plaintiffs received the certificate and receipt for the amount of the re-assessment, the defendant again encountered Wales at Olean, traveling and peddling with the establishment under his charge, and thereupon demanded that Wales should produce and exhibit his special tax receipt. And thereupon Wales did produce and exhibit to the defendant the same special tax receipt which he had before, in July, exhibited ; neither he nor the plaintiffs at that time having any other applicable to the establishment under charge of Wales. The defendant thereupon inquired of

Wales if his employers had applied for an additional license, and was informed by him that they had, and expected it every mail; that they had sent to the collector of the 27th district the additional $25, to make up the $50 required of a peddler of the first class. The defendant said that would not do; that he must have the additional receipt before Wales could proceed, and thereupon, as such assistant assessor, seized and took possession of the establishment, including the horses, wagon, harness, appurtenances and goods, and reported the facts to the assessor of the 31st district. On the 20th of September, the day after the plaintiffs received from this collector the certificate of re-assessment, they exhibited the same to the defendant, attached to the first receipt which had before been exhibited to him, and demanded a release of said seizure, which the defendant refused without an order from the assessor. The defendant retained the property in his possession for about ten days, when it was released to the plaintiffs by order of said assessor. For the damages resulting for the seizure and detention for the ten days, the action is brought; and the referee reported in favor of the plaintiffs for the amount of the damages found by him to have been sustained by the plaintiffs by reason of such seizure and detention.

The seizure in question is claimed to have been made under the 74th section of the internal revenue act, which provides as follows: "Every person exercising or carrying on any trade, business or profession, or doing any act for which a special tax is imposed, shall, on demand of any officer of internal revenue, produce and exhibit the receipt for the payment of the tax; and unless he shall do so, he may be taken and deemed not to have paid such tax. And in case any peddler shall refuse to exhibit his or her receipt as aforesaid, when demanded by any officer of internal revenue, said officer may seize the horse or mule,

Crosby *v.* Brown.

wagon and contents, or pack, bundle or basket, of any person so refusing."

The section then proceeds to provide for a notice to show cause why the property so seized should not be forfeited, and that if no sufficient cause be shown, the assessor may direct a forfeiture, and order a sale for the benefit of the United States. What cause can be shown to avoid the forfeiture is not indicated. The preceding section of the act (§ 73) provides a penalty for the carrying on of any trade or business, or doing any act, for the carrying on or doing of which a special tax is imposed, without the payment thereof as required by law, to wit, a fine of not less than $10, nor more than $500.

The power of summary seizure and forfeiture conferred by the 74th section upon the thousands of internal revenue officials throughout the country, to be exercised at their discretion, is an extraordinary power, in derogation of common right, and if it can be maintained consistently with that provision of the constitution, which provides that no person shall be deprived of his property without due process of law, or consistently with that other provision, which declares that the right of the people to be secure in their effects against unreasonable seizures, shall not be violated, (as to which we express no opinion,) it certainly can need no argument to show that the statute conferring it must be most strictly interpreted, and cannot be extended, as against the citizen, one iota beyond what the language of the act imperatively requires.

The defendant made the seizure, in this instance, upon the ground that the plaintiffs (or their agent, Wales) were doing the business without having paid the special tax required by law to be paid by persons transacting such business, and perhaps upon the further ground, that the certificate of the collector did not contai· the name of Wales the agent, but only the names of his employers who had paid the tax, and not upon the ground that Wales did

not, upon demand, produce and exhibit the receipt which he had.

It is sufficient to say that it is upon such *refusal* only that the statute purports to authorize the seizure. The liability incurred for transacting the business without payment of the special tax, is announced in section 73. The extent of the liabilty, for that act, is a fine of $500; whereas, by a seizure of the property and its subsequent forfeiture, the pecuniary consequences may exceed, and in the present instance they probably would have far exceeded, that sum. It is only in case of contumacy, in refusing to produce and exhibit the receipt, which the person of whom its production is demanded has, that the seizure is authorized. And the power conferred to seize assumes that there is a receipt which may be produced.

The object of the provision is plain enough. Peddlers traveling through the country and encountering revenue officers, to whom they were unknown, might greatly embarrass the officials in the execution of the law, by captious and wanton refusals to exhibit the evidence of the payment of the tax, and yet render any prosecution for its non-payment abortive, and subject the government to useless expense, by proving on a trial, that the required tax had been paid.

If the peddler refuses to produce the evidence of the payment of the tax, the officer endeavoring to enforce the law is left wholly in the dark, and cannot act intelligently on the question of the propriety of instituting a prosecution for the non-payment of the tax. It is manifest, we think, that the authority to seize the property was only intended by congress, to secure the production and exhibition to the officer of such receipt, or evidence of payment as might have been issued to the peddler by the collector. At all events, such is the import of the language, and it is not to be presumed that such would have been the only language

Crosby *v.* Brown.

used if it had been intended to authorize a seizure, in case the required special tax had not been paid.

If such had been the purpose of the provision, it could not have escaped the attention of the legislature, that there was a plainer and simpler mode of declaring it. In this case, the referee has found that the plaintiffs were not engaged in selling by one or more original packages or pieces at one time to the same person, and so were not required to pay a tax of more than $25. The respondent claims that this finding is erroneous, upon the evidence. The respondent furthermore claims that even if the tax required to be paid was only $25, still the seizure was justified, because the receipt which had been furnished by the collector, should have specified the name of Wales as the party who had paid the tax. We do not undertake to decide either of these questions, because we consider them wholly immaterial to a justification of the seizure. We put our decision upon the ground that Wales did, as is conceded, upon the demand of the defendant, produce and exhibit to him his receipt for the payment of the tax. The right to seize and forfeit is not conferred upon these officers on account of the insufficiency, in their opinion, of the amount paid as a special tax, or for any defect which they may think exists in the form, or substance, of the receipt which has been issued by the collector. They are not called upon to exercise the judicial power of determining such questions, but only to act upon a patent fact within their own cognizance.

The order of the county court of Cattaraugus county, reversing the judgment rendered on the report of the referee, must be reversed, and that judgment affirmed.

[FOURTH DEPARTMENT, GENERAL TERM, at Syracuse, November 13, 1871. *Mullin*, P. J., and *Johnson* and *Talcott*, Justices.]